UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL ARMOUR, et al.,

    Plaintiffs,

v.

REBECCA WILSON, et al.,

    Defendants.

CASE NO. C12-851RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the motion (Dkt. # 5) of Plaintiffs Paul Armour and Kari Chase for a temporary restraining order. For the reasons stated below, the court GRANTS the motion and issues this temporary restraining order. In addition, the court orders Defendant Rebecca Wilson appear at a hearing on May 23, 2012 at 9:00 a.m. to show cause why the court should not convert this temporary restraining order into a preliminary injunction.

## II. BACKGROUND

Mr. Armour and Ms. Chase, who are engaged, contend that Ms. Wilson, who is Mr. Armour's ex-wife, has used unlawful means to gain access to their private email communications and to various private online accounts. They have, for example, presented evidence that Ms. Wilson accessed an investment account that Mr. Armour

ORDER – 1

maintains and replaced Mr. Armour's email address with her own. Armour Decl. (Dkt. # 5-2), ¶ 10, Ex. 4; Supp. Armour Decl. (Dkt. # 6) ¶ 2, Ex. 1. Mr. Armour speculates that Ms. Wilson has gained access to his online medical records, because she has learned that Mr. Armour is taking certain prescription drugs. Armour Decl. (Dkt. # 5-2) ¶ 11. Ms. Wilson has also learned that Mr. Armour is receiving medical treatment that he has discussed only with Ms. Chase in person and via email. *Id.* ¶ 12. He has presented evidence that someone using the same IP address as the person who accessed his investment accounts accessed both his email account and Ms. Chase's email account. *Id.* ¶ 13, Ex. 5.

Mr. Armour contends that Ms. Wilson has made use of the information she unlawfully acquired from his email and his online accounts. For example, she has discussed his medical information with a family therapist that she sees with Mr. Armour to address issues relating to the custody of their sons. *Id.* ¶ 15. She has also, according to him, divulged that information, along with information about his Ms. Chase's alcohol use, to a social worker addressing a petition related to Mr. Armour's oldest son. *Id.* ¶ 16. He also believes that his ex-wife has accessed information that he sent to his family law attorney, although he provides no explanation of why he believes this. *Id.* ¶ 17.

Ms. Chase makes similar allegations. She provides evidence that Ms. Wilson has gained access to private information related to Ms. Chase's professional licensing, information that she could have learned only by accessing her email. Chase Decl. (Dkt. # 5-3) ¶¶ 6-7. She also provides evidence that someone has accessed one of her social networking accounts and re-activated it, and has accessed her online credit reports. *Id.* ¶¶ 8-10.

Mr. Armour believes that Ms. Wilson gained access to this information by using "spyware" software that she installed on a laptop computer. Mr. Armour, the two teenage sons he shares with Ms. Wilson, and Ms. Chase all use this laptop computer

ORDER – 2

(hereinafter the "family laptop"). Armour Decl. (Dkt. # 5-2) ¶ 6. The evidence shows that in 2009, Ms. Wilson purchased spyware software for the purpose of monitoring her sons' computer use. *Id.* ¶ 8, Ex. 3. Mr. Armour has now discovered spyware software on the family laptop, and he believes that Ms. Wilson installed that software when she had access to the family laptop while her sons visited her. *Id.* ¶¶ 7, 9.

Mr. Armour has reported these concerns to the Redmond Police Department. *Id.* ¶ 19. He believes the Redmond Police Department is examining the laptop computer, and that it will return it to him sometime this week. *Id.*

Mr. Armour and Ms. Chase now seek a temporary restraining order ("TRO") that not only prohibits Ms. Wilson from further access to their online accounts and the family laptop, but also prohibits Ms. Wilson from making further use of the information she has already acquired from those sources. Plaintiffs have not served Ms. Wilson with either their complaint or with their motion for a TRO. They both declare, however, that they believe that Ms. Wilson will take further steps to access their information or disseminate it if she is given notice before this court issues a TRO, and that she might destroy evidence of her unlawful activity. Armour Decl. (Dkt. # 5-2) ¶ 21; Chase Decl. ¶ 11.

### III. ANALYSIS

The "standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction." *Beaty v. Brewer*, 2011 U.S. App. LEXIS 11391, at *8 (9th Cir. May 25, 2011). The primary difference is that a court can issue a TRO without notice to the adverse party. It may do so, however, only where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Where appropriate, the party seeking the TRO must explain any efforts to give notice.

ORDER – 3

Putting aside concerns about notice to the non-moving party, the court may issue a TRO where a party establishes (1) a likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131. (9th Cir. 2011).[1]

The court must view the merits of Plaintiffs' claims through the prism of the laws they invoke for relief. Although Plaintiffs raise a number of claims in their complaint, their motion for TRO relies solely on the federal Electronic Communications Privacy Act ("ECPA," 18 U.S.C. §§ 2510-2522) and its Washington analog at RCW Ch. 9.73. In relevant part, both statutes prohibit the unauthorized interception of electronic communications. 18 U.S.C. § 2511(1); RCW § 9.73.030(1). ECPA also prohibits the use or disclosure of those communications. 18 U.S.C. § 2511(1)(c)-(d). Although both statutes are primarily criminal, each authorizes a civil action. 18 U.S.C. § 2520; RCW § 9.73.060.

The court finds that Plaintiffs have raised at least a serious question on the merits of their claim that Ms. Wilson has unlawfully intercepted their email or other electronic communications. They have provided evidence that Ms. Wilson has learned information that is contained in confidential electronic communications, and have provided evidence that Ms. Wilson had the means to access that information. It is possible, of course, that

---

[1] *Winter* overruled Ninth Circuit law that permitted a party to obtain a preliminary injunction merely by proving a "possibility" of irreparable harm 555 U.S. at 22. Ninth Circuit panels initially raised questions over the scope of the *Winter* ruling. *See Shepherd v. Weldon Mediation Servs., Inc.*, 794 F. Supp. 2d 1173, 1176-77 (W.D. Wash. 2011) (reviewing cases). It now appears settled that *Winter* did not "change the requisite showing for any individual factor [in the preliminary injunction analysis] other than irreparable harm." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011).

ORDER – 4

Ms. Wilson learned some of this information through means other than the unlawful interception of electronic communications. She could have, for example, learned some of the information from her sons or from other sources. Nonetheless, there is at least a serious possibility that she has unlawfully intercepted Plaintiffs' electronic communications.

There is also evidence raising a serious possibility that Ms. Wilson has accessed Plaintiffs' online accounts. Plaintiffs have not explained why that amounts to a violation of ECPA or its Washington analog. Information stored in an online account may not qualify as a "communication" under either statute. The court finds, however, that there is at least a serious question as to whether information on an online account constitutes a communication between the account provider (e.g., a bank or medical provider) and the account holder.

The court also finds that Plaintiffs have established a likelihood that Ms. Wilson has used or disclosed the communications that she unlawfully intercepted. Plaintiffs' evidence shows that Ms. Wilson has used this information in several venues.

Moving away from the likelihood of success on the merits, the court finds that Plaintiffs have already been irreparably harmed, and that it is highly likely they will suffer further irreparable harm if the court does not issue a TRO. The court finds it difficult to question the irreparable nature of the harm inherent in the disclosure of one's private medical history, substance use history, and other information of the type Plaintiffs describe.

The balance of hardships overwhelmingly favors Plaintiffs. Although the court has not yet heard from Ms. Wilson, it is difficult to comprehend a valid interest she could assert in intercepting and disclosing Plaintiffs' private information. The court finds she will suffer no hardship if the court enjoins her from unlawful conduct and using the fruits of that unlawful conduct.

ORDER – 5

The public interest strongly favors the protection of private information. Again, the court cannot conceive that Ms. Wilson's alleged conduct advances any public interest.

Finally, the court finds that Plaintiffs have established that the court should issue a TRO without first giving notice to Ms. Wilson. If Plaintiffs' suspicions regarding Ms. Wilson's conduct are correct, it is not difficult to imagine that Ms. Wilson would engage in further violations of the law if she were to receive notice of this motion, and it is not difficult to imagine that she might attempt to destroy evidence of her conduct. Moreover, as the court will soon discuss, it will give Ms. Wilson an opportunity to appear before this court to present any evidence or argument that undermines Plaintiffs' motion.

## IV. TEMPORARY RESTRAINING ORDER

For the reasons stated above, the court enters the following temporary restraining order:

Pending further order of the court, the court prohibits Defendant Rebecca Wilson or anyone acting on her behalf from engaging in the following acts:

1) intercepting any of Plaintiffs' electronic communications;
2) accessing any of Plaintiffs' online accounts;
3) using or divulging any information that she learned by intercepting Plaintiffs' electronic communications or accessing their online accounts;
4) modifying or destroying any evidence in her possession that bears on whether she has intercepted Plaintiffs' electronic communications, accessed their online accounts, or used or disclosed information she has learned by intercepting their electronic communications or accessing their online accounts.

Because the court finds no possibility that Ms. Wilson will suffer pecuniary harm, even if the court has wrongfully entered this injunction, the court finds that no bond is necessary to support this temporary restraining order.

ORDER – 6

This temporary restraining order will take effect as soon as Plaintiffs serve it on Ms. Wilson. Plaintiffs are directed to serve Ms. Wilson with this temporary restraining order, their complaint, their motion for a TRO and all material they filed to support that motion. Plaintiffs shall immediately inform the court when they have accomplished service on Ms. Wilson.

## V. ORDER TO SHOW CAUSE

The court orders Ms. Wilson to show cause why the court should not convert this temporary restraining order into a preliminary injunction. She shall show cause at a hearing before this court at 9:00 a.m. on Wednesday, May 23, 2012. The hearing will be in courtroom 13106 at the following address:

> United States District Court
> 700 Stewart Street
> Seattle, Washington 98101

Ms. Wilson may file a written response to this order in advance of the hearing, but she is not required to do so.

## VI. CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' motion for a temporary restraining order. Dkt. # 5. The court orders Ms. Wilson to show cause, at a hearing set for 9:00 a.m. on May 23, 2012, why the court should not convert the temporary restraining order into a preliminary injunction.

DATED this 18th day of May, 2012.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7